## Commonwealth v. Bartlett

*Joseph F. Ogden,* for Commonwealth.
*Davis R. Hobbs,* for defendant.

FARR, P. J., April 22, 1940.—This writ has brought before us the record from the docket of Newell A. Doty, justice of the peace, of the conviction of Walter Bartlett

for violation of section 1103 of The Game Law of June 3, 1937, P. L. 1225.

The specific complaint is that defendant, Walter Bartlett, did "wilfully and unlawfully attempt to collect bounty on two weasels after said weasels had been killed for a period of longer than four months previous to claim for bounty. Said claim being dated January 23, 1940, contrary to said section 1103 of the Game Law, all of which is in violation of the act of General Assembly of the Commonwealth, in such case made and provided approved the third day of June, A. D. 1937, P. L. 1225, as amended by act approved the *June* day of June 24, 1939, P. L. 810."

The transcript is as follows, "Commonwealth of Pennsylvania versus Walter Bartolett Warrant issued on the 5th day of March 1940, on oath of Gerald M. Tiffany Defendant charged with Attempting to Collect Bounty on Weasels after 4 month period inviolation of Section 1103 of Act of June 3d 1937 P. L. 1225 Previous date of Claim Said said Claimbeing dated january 23d 1940 Arest being made by A Game Protector Gerals M. Tiffany." "Defendant Brought in March 18th 1940 at 5 Oclock P.M. and Charged as abode. Defendant pleads Guilty. Gerald M. Tiffany being Sworh says that the above violation and informationis true and Correct. M B Wells A Game Protector Sworn says the above Statement of Tiffany is true and Correct A Full and Complete Hearing The Defendant is Fined as per the above Act. $100.00 and A Cost. Having No Money the defendant is hereby Commited to the Wyoming County Jail for the Yerm of 105 Days from this Date."

The applicable sections of the acts involved, sections 1103 and 1105, are as follows:

"Any person having killed in a wild state within this Commonwealth any such predator, and being desirous of securing the reward or bounty provided for such killing, shall produce such slain predator, or the entire pelt of any animal, and the entire body of any bird, before any game

protector, or deputy game protector, or any other person authorized to administer oaths within this Commonwealth, and shall make affidavit on forms supplied by the commission, that (a) he or some member of his immediate family or household, naming such person, killed the same (naming it), (b) stating the date of such killing, (c) that it was killed in a wild state, (d) that the place (naming it) where such animal or bird was killed was within the Commonwealth, (e) that such animal or bird was not reared or held in captivity, and released, and (f) that such person was not responsible, directly or indirectly, for having such animal or bird imported into the Commonwealth or released. . . .

"The claimant for bounty shall forward such affidavit and the unmutilated, salted, or cured skin or pelt of the animal or animals to the director at Harrisburg within four months from the date of killing, and the affidavit and the entire body of any bird shall be forwarded or delivered to the director at Harrisburg within forty-eight hours after killing."

"Section 1105. . . . It is unlawful for any person to collect or attempt to collect, or to aid, conspire or assist in the collection of, a bounty through the presentation of a skin, or a carcass, or any part thereof, of any animal or bird upon which no bounty is authorized in accordance with the provisions of this act, or through deception of any character; or to present, for the purpose of collecting a bounty, the skin or carcass, or any part thereof, of an animal or bird that has been reared or held in captivity or released, or the skin or carcass, or any part thereof, of any animal or bird captured outside of this Commonwealth; or to collect or attempt to collect, or to aid, conspire, or assist in collecting a second bounty for the killing of any animal or bird upon which a bounty has already been paid.

"Any person who shall wilfully or fraudulently collect or attempt to collect, or aid, conspire or assist in collecting, any bounty to which the claimant or any other per-

son is not legally entitled under the provisions of this act; or shall aid, abet or assist in any capacity, officially or otherwise, in any attempt to defraud the Commonwealth through the collection or payment of any reward or bounty, shall be guilty of perjury and punishable as a misdemeanor where a false affidavit is made, and in addition thereto, upon conviction in a summary proceeding, or upon signing an acknowledgment of the offense committed, shall be sentenced to pay to the Commonwealth, for the use of the Game Fund, a fine of one hundred dollars and costs of prosecution, and in default of the payment of the fine and costs so imposed, shall suffer imprisonment in the jail of the county in which the affidavit is made for a period of one day for each dollar of costs and fine imposed and unpaid.

"Any person who shall collect a bounty to which such person is not legally entitled, under the provisions of this act, shall, in addition to the fines herein imposed, be required to refund to the commission such amounts as shall have been unlawfully collected.

"All skins of animals, or parts thereof, or the bodies of any birds, or parts thereof, presented for bounty in a false claim, for which no bounty is provided, or otherwise contrary to the provisions of this act, are hereby declared forfeited to the Commonwealth, and shall be disposed of by the director."

Defendant complains: (a) That the record does not contain the substance of the evidence warranting conviction; (b) That no judgment of conviction was entered; (c) That no place where offense was committed is shown giving justice of the peace jurisdiction; (d) That there is no such offense as set forth in the information and for which defendant is sentenced.

This judgment must stand or fall upon the record itself, although we doubt that defendant intended to plead guilty. Justices have the practice of interrogating defendants and, by their answers, concluding that they confess their guilt. It will be observed that the justice never-

theless held his hearing irrespective of the plea, which in the absence of a signed confession was the proper procedure. However the plea avails nothing. Section 1105 provides two methods which may lead to conviction and sentence: (*a*) "upon conviction in a summary proceeding;" (*b*) "or upon signing an acknowledgment of the offense committed". One or the other of these methods must be employed to enable the justice of the peace to sentence. The latter not having been done we must rely upon the regularity of the conviction to sustain it. There is no evidence warranting it and there is no judgment or finding of guilt.

At any rate the charge is that defendant attempted to collect a bounty on weasels, more than four months after they were killed. The latter part of section 1103 is a simple instruction as to how to proceed. The purpose of the act is to prevent fraud by duplication, collection on tame animals, or those imported into the Commonwealth. It was never intended to harass our citizens with fines and imprisonment because the pelts got to Harrisburg a few days late. Section 1105 defining offenses, makes no reference whatever to failure to present the skin, etc., to the department within four months after the kill. It provides that the offender shall be guilty of perjury, a misdemeanor, and in addition thereto upon summary conviction shall be sentenced, etc. Both remedies may not stand and if one must fall it must be the summary proceeding. If by some extraordinary grammatical construction different classes of offenses may be isolated, still we have mixed elements of common-law offenses (conspiracy) triable only by a jury under article 1, sec. 6, of the Constitution, and penal offenses subject to summary procedure.

To make out an offense we must add something to an act that must be strictly construed. Then, after committing that violence to the law, we must add to the transcript the judgment of conviction and a proper alternative sentence which we have no power to do.

Accordingly the judgment is reversed.